IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SAMUEL L. GUY,  )
 )
       Plaintiff,  )
 )
v.  ) C.A. No. 17-576 (MN)
 )
CITY OF WILMINGTON,  )
 )
       Defendant.  )

# MEMORANDUM OPINION

Samuel L. Guy, Attorney at Law, Wilmington, DE – Pro Se Plaintiff

Barry M. Willoughby, Lauren E.M. Russell, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE – attorneys for Defendant

February 28, 2019
Wilmington, Delaware

*[signature: Maryellen Noreika]*

NOREIKA, U.S. DISTRICT JUDGE:

Before the Court is the Motion to Dismiss and to Set a Briefing Schedule[1] (D.I. 16) filed by Defendant City of Wilmington ("Wilmington" or "Defendant"). The Amended Complaint (D.I. 14) filed by Plaintiff, Samuel L. Guy ("Guy" or "Plaintiff"), raises three claims under 42 U.S.C. § 1983 and one state law claim. Defendant alleges that the Amended Complaint fails to state a claim upon which relief can be granted and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and over the state law claims pursuant to 28 U.S.C. § 1367. For the reasons set forth below, the Court will grant Defendant's motion to dismiss pursuant to Rule 12(b)(6).

**I.     BACKGROUND**

Plaintiff is an At-Large Member of the 107th Session of the Wilmington City Council ("Council"). (D.I. 14 ¶¶ 1, 14). At the close of the 106th Session of the Council, a total of $15,400.00 in scholarship and discretionary funding for At-Large Councilmembers remained and carried over to the new session[2]. (*Id.* ¶ 11). Plaintiff calculates that there should have been an average of $3,850 available for distribution to each At-Large Councilmember in the 107th Session. (*Id.* ¶ 12). Plaintiff, however, was not allocated any funds. (*Id.* ¶ 15). Meanwhile, re-elected At-Large Councilwoman Loretta Walsh received $8,650.00, newly-elected At-Large Councilwoman Rysheema Dixon received $6,500.00, and newly-elected At-Large Councilman Ciro Adams received $250. (*Id.* ¶ 16). Following the disbursements, the Council President, Hanifa Shabazz,

---

[1]   Whereas the Court granted Plaintiff's proposed scheduling order on March 3, 2018, the Court need now only consider the Motion to Dismiss.

[2]   As the Court explained in a prior ruling, "[g]iven that the fiscal year closes on June 30th, the terms of the newly elected At-Large City Council members did not begin at the same time as the fiscal year." (D.I. 11 at 2) (internal citation omitted).

made a public announcement that the distributions were made in alphabetical order. (*Id.* ¶ 19)[3]. On May 8, 2017, Plaintiff filed a complaint in the Superior Court of Delaware against Hanifa Shabazz, Rysheema Dixon, Loretta Walsh, and the Wilmington City Council for alleged violations of the due process and equal protection clauses of the United States Constitution and Delaware Constitution. (D.I. 1, Ex. A). The complaint contended that "Shabazz made up an alphabetical order rationale as her explanation" and instead "distributed discretionary funds in a manner reflecting her personal preference." (D.I. 1 ¶¶ 27, 29). Plaintiff alleged "[t]he method of operating the scholarship and discretionary fund with regard to the At-Large members of the 107th Session of the Wilmington City Council violates the constitutional guarantees of equal protection of the laws under the Federal Constitution (a concept that inures as a matter of due process under the Delaware constitution) and due process of law under both Federal and Delaware Constitutions." (*Id.* ¶ 42). Plaintiff further alleged that "Ciro Adams has had his constitutional rights violated as well but he doesn't seem concerned according to email correspondence he has distributed." (*Id.* ¶ 40). Defendants Shabazz, Dixon, Walsh, and Wilmington City Council removed the action to this Court on May 17, 2017, (D.I. 1), and subsequently filed a motion to dismiss on June 16, 2017 (D.I. 3). On February 6, 2018, the Court issued an Opinion and Order granting the motion to dismiss finding: (1) the individual defendants' actions were subject to legislative immunity; (2) the Wilmington City Council was not a proper defendant; (3) Plaintiff had no protectable property

---

[3] The Court previously explained that "[b]ased on Exhibit B of the complaint, it appears the newly elected At-Large City Council members inherit the discretionary fund of their predecessors and received money based upon whom they replace, in alphabetical order. Walsh was reelected so she retained the funds she had not used, $8650. Brown, Cabrera, and Wright were the former At-Large City Council members and they were replaced by Adams, Dixon, and Guy. Brown had $250 left in discretionary funds, and it was allocated to Adams; Cabrera had $6500 left in discretionary funds, and it was allocated to Dixon, and Wright had no money left in discretionary funds, and the zero amount was allocated to Guy." (D.I 11 at 2-3) (internal citations omitted).

interest in the scholarship and discretionary funds, and thereby no due process claim; and (4) Plaintiff's equal protection clause claim, as pleaded, failed to state a claim. (D.I. 11). Regarding the equal protection claim, the Court stated:

> As currently pled, the complaint does not allege that Guy was treated differently from similarly situated newly elected At-Large Council members. It is clear from the allegations that the discretionary funds were allocated to the newly elected At-Large City Council members based upon the alphabetical order of the last names of the outgoing At-Large Council members and the alphabetical order of the last names of the newly elected At-Large City Council members. The allocation method used was the same for all newly elected At-Large City Council members. Unfortunately for Guy, his name was last in the alphabetical order and the corresponding outgoing At-Large City Council member had no money left in discretionary funds.

(*Id.* at 12). The Court, however, provided Plaintiff leave to file an amended complaint naming proper defendants and reasserting a properly pleaded equal protection claim. (*Id.*).

On March 2, 2018, Plaintiff filed the Amended Complaint naming Wilmington as the sole Defendant. (D.I. 14 ¶ 5). The Amended Complaint is largely identical to the original[4], save for the substituted Defendant and a new section outlining the four counts. In that new section, the Amended Complaint realleges a violation of the Equal Protection Clause (Count I), but also adds claims alleging violations of the First Amendment and Due Process (Counts II and III[5]), as well

---

[4] To the extent that the Amended Complaint still includes allegations of due process violations with respect to the disbursement of funds, the Court notes that it previously dismissed Plaintiff's due process claim with prejudice (D.I. 12 ¶ 5), and any attempt to re-raise the issue here is improper. As previously stated, "Guy has failed to establish a protected interest in the discretionary funds that council members distribute to the public" and "[w]ith no protected interest in the property . . . the due process claims under the United States Constitution and Delaware Constitution fail." (D.I. 11 at 10).

[5] Plaintiff's pleading is not entirely clear in connection with Counts II and III which he jointly labels "42 U.S.C. Section 1983-Retaliation, 1st Amendment, and Due Process." (D.I. 14 at 9). The entries made under this heading indicate that Plaintiff attempts to make out a claim for a First Amendment retaliation violation ("[t]he object of the resolution was (sic) get Plaintiff to refrain from . . . exercising his 1st Amendment rights to speak on public issues") and a Due Process violation ("Hanifa Shabazz placed a censureship (sic) focused

3

as a violation of Wilmington City Code § 35-165 (Count IV). (*Id.*). The Court will review each of these counts in turn.

## II. LEGAL STANDARD

A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (citing *Conley v. Gibson* 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2)). When dismissal is sought under Rule 12(b)(6), the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is facially plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Further, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of the plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc*., 522 F.3d 315, 321 (3d Cir. 2008) (internal quotations omitted).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig*.,

---

resolution on the City Council agenda" and "Plaintiff Guy's (sic) was not given notice of this resolution."). For the sake of clarity, the Court will consider Count II as a First Amendment retaliation claim and Count III as a Due Process claim.

114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The court may grant a motion to dismiss only if, after "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, [the] plaintiff is not entitled to relief." *Id.* "In deciding a Rule 12(b)(6) motion, a court must consider *only* the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (emphasis added).

### III. DISCUSSION

#### A. Count I – 42 U.S.C. § 1983, Equal Protection

In an effort to cure the pleading deficiencies identified in the Court's February 6, 2018 order, the Amended Complaint adds that (1) Guy "is a black African American male and was the only Council Member At-Large who did not receive and discretionary funds," (D.I. 14 ¶ 44), (2) he "constitutes a class of one since he is the only black African American male serving At-Large," (*Id.* ¶ 45), (3) "there is no rational basis for a pool of money to not be divided up equally among similarly situated At-Large members of City Council," (*Id.* ¶ 46), and (4) "[t]he discretionary funds were intentionally divided unequally." (*Id.* ¶ 48).

The equal protection clause of the Fourteenth Amendment requires that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. The purpose of the clause "'is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)). Plaintiff raises a "class of one" theory of equal protection. *See Vill. of*

5

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Under the class of one theory, "plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

In connection with the equal protection clause, persons are similarly situated "when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Here, the Amended Complaint suggests "persons similarly situated" in this case are all other At-Large members of the Council. (D.I. 14 ¶ 46). The four members, however, are not alike in all relevant aspects. As the Court explained in its February 6, 2018 ruling, "Walsh was reelected so she retained the funds she had not used." (D.I. 11 at 2). That Walsh was already an At-Large member of the Council and had been allocated funds for the July 1, 2016 to June 30, 2017 fiscal year, differentiates her from Plaintiff and the other At-Large members. Thus, Guy must allege that he was treated differently than the other newly-elected At-Large members, Adams and Dixon. A review of the Amended Complaint, however, reveals that Plaintiff alleges Adams was also treated unconstitutionally by not receiving an equal share of the leftover funds[6]. If Adams was also harmed, it is difficult to reconcile that contention with Plaintiff's subsequent allegation that he was discriminated against specifically. Moreover, Defendant argues that Plaintiff has failed to show disparate treatment because all three

---

[6] The Amended Complaint's concedes that At-Large Councilmember Adams "had his constitutional rights violated as well," (D.I. 14 ¶ 40) which undermines the argument that Guy is a class of one. Plaintiff further alleges that "Hanifa Shabazz, Rysheema Dixon, and Loretta Walsh intentionally received, retained or disposed of scholarship and discretionary funds, the property of another At-Large member of Wilmington City Council, with the intent to deprive Samuel L Guy and Ciro Adams of the funds or to the appropriate funds." (*Id*. ¶ 24). If Adams was also harmed by the unconstitutional disbursement of discretionary funds, Guy cannot stand alone in his own class.

6

newly-elected members were subject to the same distribution scheme (alphabetically by last name). (D.I. 17 at 7). As this Court previously recognized, "[t]he allocation method used was the same for all newly elected At-Large City Council members." (D.I. 11 at 12). Plaintiff has not alleged any additional facts to overcome this finding, and the Court again finds that Guy has failed to establish a plausible claim that he was treated differently from others similarly situated.

Even accepting *arguendo*, that Guy was treated differently than others similarly situated, he has further failed to state a plausible claim that Defendant's separate treatment of him was intentional. Plaintiff's equal protection claim simply states "[t]he discretionary funds were intentionally divided unequally." (D.I. 14 ¶ 48). As stated in *Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. at 678. The Amended Complaint's allegation of intentional discrimination is purely conclusory and insufficient to support a class of one theory for an equal protection clause violation.

Moreover, Plaintiff has also failed to sufficiently plead that no rational basis exists for the varied disbursement of funds. The standard for rational basis review is very deferential and "met 'if there is any reasonably conceivable state of facts that could provide a rational basis' for the differing treatment." *Newark Cab Association v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018) (quoting *United States v. Walker*, 473 F.3d 71, 77 (3d Cir. 2007)). "[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller v. Doe*, 509 U.S. 312, 319 (1993) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). Plaintiff alleges that "there is no rational basis for a pool of money to not be divided up equally among similarly situated At-Large members of the City Council." (D.I. 14 ¶ 46). Defendant responded that "the Council has a legitimate, governmental interest in the consistent and efficient administration of its financial resources, including the Discretionary

7

Funds," and the "alphabetical order was an egalitarian and efficient way to achieve its goal of distributing the remaining Discretionary Funds." (D.I. 17 at 7) (citing D.I. 4 at 10). Without more, Plaintiff simply asserts that the alphabetical rationale was fabricated. (D.I. 14 ¶49; D.I. 19 at 7). Plaintiff provides no additional support for this allegation[7]. As with the second prong above, Plaintiff's conclusory allegation lacks factual support and is insufficient. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (stating "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (citing *Iqbal*, 556 U.S. at 678)).

Plaintiff has failed to meet any of the requirements under the test outlined in *Hill*. The Amended Complaint fails to state an equal protection claim upon which relief may be granted, and the Court dismisses Count I without prejudice.[8]

### B.  Count II – 42 U.S.C. § 1983, First Amendment

A First Amendment retaliation claim requires Plaintiff to allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003). The Third Circuit has stated that the

---

[7]  At the very least, the Court would have expected Plaintiff to lay out factual allegations that this method had not been used in previous transitions.

[8]  "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.2004)). Here, Defendant has not argued that further amendment of the equal protection claim would be futile, and the Court cannot conclude that it would be on the record before it. Thus, the Court dismisses Count I without prejudice.

second prong is "the key question" when evaluating a retaliation claim. *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (citing *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir.2000)). Here, Plaintiff alleges that he was censured by the Wilmington City Council "in retaliation for . . . opposing the receipt of no funding and in retaliation for publicly exercising freedom of speech rights . . . ." (D.I. 14 ¶ 55). He further contends that the "resolution action was in retaliation for speaking up, a protected activity." Plaintiff fails to meet the test outlined in *Thomas*.

As a preliminary matter, courts have found that receiving a censure, without more, does not infringe upon one's free speech rights. *See e.g. Phelan v. Laramie County Community College Bd. of Trustees*, 235 F.3d 1243 (10th Cir. 2000) ("Board's censure does not infringe any of Ms. Phelan's free speech rights because it did not punish her for exercising these rights. Nor does it deter her future speech."); *Zilich v. Longo*, 34 F.3d 359, 363-64 (6th Cir. 1994) (finding a city council resolution expressing disapproval of a former council member does not violate the First Amendment); *Danchuck v. Mayor of the Borough of Mount Arlington New Jersey*, No. 15-2028 (CLW), 2017 WL 3821469 (D.N.J. Aug. 31, 2017) (noting "the nature of the retaliatory act must be more than trivial and there can be no violation where the actions were merely criticism, false accusations, or verbal reprimand."). In *Phelan*, the plaintiff sued a Board of Trustees, on which she sat, for censuring her, following a violation of the Board's ethics policy. 235 F.3d at 1245. The censure "expressed [the Board's] belief that her conduct . . . was contrary to the ethics policy" and "asked her to discontinue the 'inappropriate' behavior." *Id*. at 1246. The court concluded, "the Board's censure is clearly not a penalty that infringes Ms. Phelan's free speech rights. In censuring Ms. Phelan, Board members sought only to voice their opinion that she violated the ethics policy and to ask that she not engage in similar conduct in the future. Their statement carried

no penalties; it did not prevent her from performing her official duties or restrict her opportunities to speak." *Id.* at 1248. The similarities to the facts at issue here are striking.

Turning to the test outlined in *Thomas*, Guy's speech, as it pertains to verbal and online communications regarding the activities of the Council, is political speech and thus provided the "broadest protection" under the First Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 14 (1976). The question, however, is whether the censure[9] was sufficient to deter a person of ordinary firmness from exercising their constitutional rights to free expression. In reviewing this issue, "courts have required that the nature of the retaliatory acts . . . be more than *de minimis* or trivial" and include more than mere "criticism, false accusations, or verbal reprimands." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). Though this question has been called "a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts," i*d.*, the Court finds it can properly review the actions at this stage because the Plaintiff has placed all the facts, including Resolution 17-026 (the "Censure"), before the Court. (D.I. 15 (submitted as an exhibit to the Amended Complaint (D.I. 14)). Here, the speaker is Plaintiff Guy, the purported retaliator is Wilmington via the Council, and Guy is a member of that Council. The Censure indicates that Plaintiff had "engaged in behavior which serves to cast a negative light on this body and limit its effectiveness" "engaged in conduct not keeping with the provision of decorum and propriety, particularly through asserting allegations of racism against his colleagues, and through questioning the personal motives of members," "employed language that has been received as abusive, berating, degrading and

---

[9] The test requires a "retaliatory action sufficient to deter a person" from exercising their rights. For the purposes of the motion to dismiss, the Court accepts that the censure was an action in retaliation to Plaintiff's political speech.

10

threatening towards both Members of Council and Council staff," and "engaged in the proffering of baseless allegations." (D.I. 15, Ex. 1 at 1-2). The resolution concludes that "the Council seeks to formally censure and admonish [Plaintiff] following the conduct observed and reported both by members of this legislative body as well as staff, and further, to respectfully remind this member of Council of his duties and responsibilities and encourage him to correct his behavior." (*Id.* at 3).

It has been previously stated that "[i]n the context of city councils that passed resolutions denouncing other politicians' acts, . . . courts have required the resolution to not merely reprimand the offending politician but to mete out some form of official punishment." *Page v. Braker*, No. 06-2067(WJM), 2007 WL 432980, at *3 (D.N.J. Jan. 31, 2007) ("The Court cannot see how a mere showing of disapproval, expressed by a councilman's colleagues, and lacking any real force or punishment, could prevent a person of ordinary firmness from exercising his constitutionally protected speech."). Based on the facts here, any retaliatory conduct against Guy was at most *de minimis* and does not rise to the level of a First Amendment violation. The Censure included no consequences for Plaintiff, but simply voiced the Council's disapproval of his conduct towards Councilmembers and Council staff. The Court cannot find that the Censure, lacking any force or punishment, would prevent a person of ordinary firmness from exercising their First Amendment rights going forward. Thus, Plaintiff has not established the second requirement of a retaliation claim and the Court dismisses Count II with prejudice as futile.

### C. Count III – 42 U.S.C. § 1983, Due Process

The Amended Complaint refers to a due process claim in the combined heading for Counts II and III but fails to explain what due process rights were purportedly violated by Wilmington in connection with the Censure. The crux of the Amended Complaint's due process claim appears to be that "Plaintiff Guy's (sic) was not given notice of the [censure] resolution" and "was unable

11

to prepare to meet the false accusations asserted by Hanifa Shabazz at the Council meeting where the resolution was presented and Plaintiff Guy did not have an opportunity to he heard and present evidence." (D.I. 14 ¶¶ 52, 54). The due process Clause of the Fourteenth Amendment states "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amdt. 14 §; accord Amdt. 5. "[T]he first step in analyzing a procedural due process claim is to determine whether the 'asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property.'" *Thomas v. Town of Hammonton*, 351 F.3d 108, 113 (3d Cir. 2003) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

As discussed above, Plaintiff alleges that the Censure violated his First Amendment rights, and thus his argument seems to be that the lack of notice and opportunity to be heard with respect to the Censure violated his due process rights. Freedom of speech has long been considered a right protected by the due process clause of the Fourteenth Amendment. *See Grosjean v. American Press Co.*, 297 U.S. 233, 244 (1936) ("That freedom of speech and of the press are rights of the same fundamental character, safeguarded by the due process of law clause of the Fourteenth Amendment against abridgement by state legislation, has likewise been settled by a series of decisions . . . ."). Because the Court has already found, however, that the Censure, without more, did not violate Plaintiff's First Amendment Rights, any claim to a due process right based thereon must also fail. Because Plaintiff has not pleaded the deprivation of a liberty or property interest, the Complaint fails to state a due process claim upon which relief can be granted and thus the Court dismisses Count III with prejudice as futile.

### D. Count IV – Wilmington City Code § 35-165

Count IV alleges that the Defendant has violated Wilmington City Code § 35-165, which makes it unlawful for "any city officer or employee . . . to discriminate or engage in any

discriminatory practice, or to acquiesce in any of the same, in any aspect of such grant or donation, against any person on the basis of his race . . . ." Having now dismissed each of Plaintiff's constitutional claims, the Court will decline the opportunity to exercise supplemental jurisdiction over this remaining state-law question. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court "may decline to exercise supplemental jurisdiction" over state-law claims if it "has dismissed all claims over which it has original jurisdiction"). Count IV is dismissed without prejudice.

## IV. CONCLUSION

For the forgoing reasons, Defendant's Motion to Dismiss is GRANTED. An appropriate order will follow.